3:25-mj-00276

DISTRICT OF OREGON, ss:                AFFIDAVIT OF JASON T. BUELT

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Jason T. Buelt, being duly sworn, do hereby depose and state as follows:

**Introduction and Detective Background**

1.      I am a Task Force Officer with the Federal Bureau of Investigation ("FBI") and a Peace Officer in the State of Oregon.  I am a Detective with the Beaverton Police Department and have been so employed as a Police Officer for over 26 years.  I am currently assigned to the Westside Interagency Narcotics Team ("WIN") in Washington County, Oregon.  I am authorized by law to conduct investigations and make arrests for felony offenses in violation of United States Code, Title 21.  My duties include, but are not limited to, the investigation of crimes relating to the violation of the Uniform Controlled Substance Act and include dismantling/disrupting Drug Trafficking Organizations ("DTO's") and Money Laundering Organizations ("MLO's").

2.      My formal law enforcement training includes a Basic certification received from the Oregon Department of Public Safety Standards and Training ("DPSST").  I currently hold an Advanced Law Enforcement certification through "DPSST."  I have over 5,200 training hours of additional training through the Beaverton Police Department.  The training from "DPSST" and the Beaverton Police Department included, but was not limited to, narcotic investigations, testing of suspected controlled substances by scientifically accepted methods, and narcotic identification.

3.      I have received specialized training in narcotics investigations including narcotics identification, surveillance techniques, and handling and packaging of evidence.  This training

AFFIDAVIT OF JASON T. BUELT                                              Page 1

had been provided to me by "DPSST," the United States Drug Enforcement Administration

("DEA"), and in-service training through the Washington County Sheriff's Office.  Included in

my training and experience, I have training specific to the identification and investigation of

persons involved in the use, sale, distribution, and manufacturing of controlled substances

including, but not limited, to methamphetamine, heroin, fentanyl, cocaine, MDMA, marijuana,

and other controlled substances.

4.      I have been personally involved in numerous state and federal investigations and

arrests involving the violation of the Uniform Controlled Substance Act and violations of Title

21 U.S. to include Title 21 USC 841(a)(1), Possession with Intent to Distribute Fentanyl.  In

many of these investigations, suspected controlled substances were confiscated and tested, and

then a confirmatory test was performed by the Oregon State Crime Laboratory which confirmed

the identify of the controlled substance.  These investigations have included the use of

confidential sources ("CS's"), sources of information ("SOI"), toll records, physical

surveillances, controlled purchases, buy busts, and the execution of search warrants. These

investigations have also included possession with intent to distribute, and distribution of

controlled substances. These investigations have resulted in numerous state and/or federal

prosecutions of individuals who have possessed, and or distributed controlled substances, as well

as the seizure of those illegal drugs and the proceeds from the sale of those illegal drugs.

5.      I submit this affidavit in support of a criminal complaint and arrest warrant for:

- **Denis Alejandro Diaz-Castro,** date of birth xx/xx/2006, (hereinafter referred to as **Diaz-Castro**) for the crime of possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(vi); and

- **Anthony Aleman,** date of birth xx/xx/2005, (hereinafter referred to as **Aleman**) for the crime of possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(vi).

As set forth below, there is probable cause to believe, and I do believe, that **Diaz-Castro and Aleman** committed possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(vi).

6. This affidavit is intended to show only that there is sufficient probable cause for the requested complaint and arrest warrants, and it does not set forth all my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

7. Pursuant to 21 U.S.C. § 841 (a)(1), (b)(1)(A)(vi) makes it illegal to possess with the intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl.

## Statement of Probable Cause

8. This affidavit is based on a joint investigation conducted by the Westside Interagency Narcotics Team (WIN) and the Federal Bureau of Investigations (FBI), hereinafter referred to collectively as "Investigators."

AFFIDAVIT OF JASON T. BUELT                                                              Page 3

9.      During the third week of September 2025, a CS[1] notified Investigators about a Hispanic or Honduran male, subsequently identified as **Diaz-Castro**, selling large amounts of fentanyl around the 140th block of NE Sandy Blvd area in Portland, Oregon.  The CS provided Investigators with the phone number they had for **Diaz-Castro**, xxx-xxx-6718, and provided a description of the vehicle that **Diaz-Castro** usually drives, which was a silver Toyota Corolla with dark tinted windows and Oregon License Plate 644 PAE.  The CS further said **Diaz-Castro** was about 18 years old, thin, and had a tattoo of a an avocado and a Jesus mural on his left forearm, and a tattoo of a rose and skull bones on his left hand.  Investigators were able to see conversations between the CS and **Diaz-Castro** involving **Diaz-Castro** willing to sell the CS large amounts of fentanyl.

10.     On September 29, 2025, the CS notified Investigators that **Diaz-Castro** would be around Wilkes City Park located on NE 154th Avenue just south of NE Sandy Blvd. in Portland, Oregon with large amounts of fentanyl.

11.     Investigators set up around Wilkes City Park and at about 3:25pm, Investigators observed a silver Infiniti passenger vehicle with Oregon license plate 721 QPH and dark tinted windows arrive and park facing northbound on NE 154th Avenue right across the street from Wilkes City Park. Investigators observed a thin, Hispanic male exit the driver seat of the Infiniti and approach a white Honda CRV parked behind the silver Infiniti.  The Hispanic male's contact

---

[1] The identity of the CS is known to me, however, their name is redacted from this criminal complaint affidavit.  CS has convictions for Fail to Carry/Present Operator's License, Theft II, Theft I, Trespassing, Probation Violations, Unclassified Controlled Substance Offense, Unlawful Possession of Heroin, and Unlawful Possession of Methamphetamine. CS was not threatened, coerced, or made any promises for their cooperation.  CS provided information for possible consideration on pending charges.

AFFIDAVIT OF JASON T. BUELT                                      Page 4

with the driver of the white Honda CRV was brief but Investigators couldn't see if any hand-to-hand transaction took place. The Hispanic male then returned to the driver seat of the silver Infiniti. Investigators then observed the front passenger door of the silver Infiniti open and then close without anyone getting out. Investigators observed a second Hispanic male in the front passenger seat of the silver Infiniti when the passenger door was opened and the Hispanic male partially leaned out of the vehicle.

12. The Infiniti then went north on NE 154th towards NE Sandy Blvd and looped around the block before parking on NE 154th Avenue just north of NE Beech Street. This location was just north of where the silver Infiniti originally parked when it arrived in the area.

13. There was an Investigator in the park conducting surveillance who noticed that **Diaz-Castro** was staring at him. The Investigator nodded at **Diaz-Castro** and reported that **Diaz-Castro** waived him over to his vehicle. Although **Diaz-Castro** wasn't driving a silver Toyota Corolla with tinted windows, Diaz-Castro was driving a silver Infiniti with dark tinted windows and was in the exact area where the CS said **Diaz-Castro** would be. Based on this information and the fact **Diaz-Castro** waived over the Investigator in a manner that suggested **Diaz-Castro** thought the Investigator was a customer, Investigators believed more likely than not, that **Diaz-Castro** was the same person involved in the trafficking of large quantities of fentanyl that the CS had described.

14. Investigators moved in from the north and the south to "pin" in the silver Infiniti, to avoid any pursuits. Investigators had their emergency lights activated as they approached the silver Infiniti. When **Diaz-Castro** saw the Investigators, **Diaz-Castro** immediately tried to pull away from the curb and struck the Investigator's vehicle in front of him. **Diaz-Castro** then

AFFIDAVIT OF JASON T. BUELT                                                                 Page 5

reversed into another Investigator's vehicle behind him. It was obvious **Diaz-Castro** was trying to elude Investigators. Another Investigator made contact with the front driver's door of the silver Infiniti, which ended **Diaz-Castro's** attempts to elude Investigators.

15. **Aleman**, who was in the front passenger seat of the silver Infiniti, fled on foot from the silver Infiniti but was detained by Investigators a short distance away. **Diaz-Castro** was ordered out of the silver Infiniti and was detained.

16. Washington County K-9 Deputy Colburn deployed his Narcotics K-9 Mando[2] around the silver Infiniti and reported Mando alerted to the presence of controlled substances inside of the silver Infiniti.

17. Investigators searched the silver Infiniti and located a red and tan Michael Kors purse on the front passenger floorboard that contained a sandwich bag of white chunky powder, used sandwich bags with white powder residue, and a digital scale with white powder residue. Investigators also observed there was loose white powder at the bottom of the purse. Investigators also found a DMV bill of sale for a 2017 Toyota vehicle with Oregon license plate 644 PAE, which is the same vehicle the CS reported to Investigators that **Diaz-Castro** had been driving. Based on the Investigators' training and experience, the white chunky powder was most likely fentanyl.

---

[2] Mando is a 6-year-old German Shepherd/Belgian Malinois mix. Mando and Deputy Colburn are a certified narcotic detection team through the Oregon Police Canine Association (OPCA) the Pacific Northwest K9 Association (PNWK9), and the International Police Canine Association (IPCA). Mando is trained to locate and alert on the odors of Cocaine, Methamphetamine, Heroin, and Fentanyl. In the field, Deputy Colburn and Mando have been deployed on approximately 150 searches. In those 150 searches, Mando has searched approximately 841 individual houses, apartments, vehicles, parcels, and outdoors areas, with 221 alerts during those searches. Mando currently has an alert to find ratio of 98.64%.

AFFIDAVIT OF JASON T. BUELT                                      Page 6

18. Investigators later tested a sample of the suspected fentanyl from the sandwich bag found in the Michael Kors purse using TruNarc, and the test was positive for fentanyl. The powdered fentanyl seized from the purse had a net weight of 20.9 grams.

19. Investigators located a black Nike "Jumpman" backpack on the right rear passenger floorboard which contained several sandwich bags of white chunky powder and a digital scale with white powder residue. Based on the Investigators' training and experience, the white chunky powder was most likely fentanyl.

20. Investigators later tested a sample of the suspected fentanyl from the sandwich bags found in the black Nike "Jumpman" backpack using TruNarc, and the test was positive for fentanyl. The powdered fentanyl seized from the Nike "Jumpman" backpack had a net weight of 387 grams.

21. Investigators located a brown paper bag tucked in the driver's door pocket which contained a sandwich bag of white chunky powder and a smaller baggie containing a fine white powder substance. Based on the Investigators' training and experience, the white chunky powder was most likely fentanyl, and the finer white powder was either fentanyl or cocaine.

22. Investigators later tested a sample of the suspected fentanyl from the sandwich bag found in the brown paper bag using TruNarc, and the test was positive for fentanyl. The powdered fentanyl seized from the brown paper bag had a net weight of 141.4 grams.

23. Investigators later tested a sample of the finer white powder from the small baggie found in the brown paper bag using TruNarc, and the test was positive for B-phenyl-fentanyl. The fine powdered fentanyl seized from the brown paper bag had a gross weight (including original packaging) of 2.3 grams.

AFFIDAVIT OF JASON T. BUELT                                                      Page 7

24.    Investigators seized $234 in US currency from the glovebox, $167 US currency from the center console, and $231 US currency from **Aleman's** person.

25.    Investigators seized a space gray Apple iPhone from the front driver's side floorboard, a space gray Apple iPhone with a cracked screen and a Michael Jordan case from the front passenger seat, and a dead blue Samsung cellphone from the glovebox. Investigators observed both Apple iPhones were powered on and placed both Apple iPhones into airplane mode.

26.    Investigators advised **Diaz-Castro** of his Miranda Rights in Spanish from a prepared card and **Diaz-Castro** stated, "Comprendo" which means, "I understand" in English after **Diaz-Castro** was asked if he understood each of his Miranda Rights. **Diaz-Castro** admitted the drugs found in the silver Infiniti were fentanyl. **Diaz-Castro** said he doesn't sell drugs and is only a driver. **Diaz-Castro** said the silver Infiniti belonged to an uncle who lived in Gresham. **Diaz-Castro** said he is currently staying at a Motel 6 but couldn't tell me where or what room he was staying in. **Diaz-Castro** had a tattoo of a rose and tattoos of skull bones on his left hand as well as a tattoo of a biblical figure on his left forearm as the CS had described to Investigators.

27.    Investigators checked **Diaz-Castro** for warrants and learned **Diaz-Castro** was on abscond status from the Oregon Youth Authority for a previous narcotics arrest in August of 2023 in Washington County, Oregon.

28.    Investigators advised **Aleman** of his Miranda Rights in Spanish from a prepared card and **Aleman** stated, "Si" which means, "Yes" in English after **Aleman** was asked if he understood each of his Miranda Rights. **Aleman** originally gave Investigators the name Marvin

AFFIDAVIT OF JASON T. BUELT                                                          Page 8

Alexandro Flores and an incorrect DOB.  **Aleman** was confronted about giving a false name and then **Aleman** provided Investigators with his correct name and DOB.  **Aleman** didn't have anything to say about the fentanyl found in the vehicle.  **Aleman** said he has only been in the United States for three months.

29.    Investigators checked **Aleman** for warrants and learned **Aleman** had a current felony warrant for his arrest out of Multnomah County for Manufacturing, Delivery, and Possession of Fentanyl from September of 2025.  **Aleman** confirmed he was arrested for drug charges earlier in the year in Portland.

30.    Investigators later called the phone number the CS provided for **Diaz-Castro**, xxx-xxx-6718, and the space gray Apple iPhone found on the driver's floorboard where **Diaz-Castro** was seated rang.

31.    The total amount of fentanyl powder seized from the silver Infiniti was 551.6 grams.  Several photographs of evidence seized from the silver Infiniti are shown below for the Court's reference:

 

AFFIDAVIT OF JASON T. BUELT                                         Page 9








 

32.     The first two photographs depict the powdered fentanyl found in the red and tan

Michale Kors purse found on the front passenger floorboard.  The next two photographs depict

the powdered fentanyl found in the black Nike "Jumpman" backpack on the right rear

floorboard, the next three photographs depict the fentanyl found in the brown paper bag in the

driver side door pocket of the silver Infiniti, and the last two photographs depict the US currency

found in the glovebox and the center console of the silver Infiniti.

33.     I know that drug traffickers are regularly selling powdered fentanyl, a Schedule II

controlled substance.  I have seen and been involved in the seizure of multiple pounds of

powdered fentanyl and both field tests and forensic laboratory analysis conducted on samples of

the powder have confirmed the presence of fentanyl within them.  I know a typical user of

fentanyl will either buy powdered fentanyl or counterfeit M30 pills containing fentanyl that they

will then burn on a piece of tin foil and inhale the fumes.  Sometimes a user will simply inhale

AFFIDAVIT OF JASON T. BUELT                                          Page 11

the powdered fentanyl or ingest the pills.  I know a gram of fentanyl powder typically sells for approximately $40 to $80 a gram.  Depending on their level of addiction, I know that a user of powdered fentanyl will use in quantities of less than 1/10 of a gram.  I know that dealers of powdered fentanyl will often buy fentanyl in larger quantities and then break off and sell it in smaller quantities of a gram or less.  I know that a person possessing the amounts of fentanyl powder described above does not possess the powder for personal use but rather such a quantity indicates that they are possessed for purposes of further distribution.

### Conclusion

34.    Based on the foregoing, I have probable cause to believe, and I do believe, that **Denis Alejando Diaz-Castro** has committed the crime of possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(vi). I therefore request that the Court issue a criminal complaint and arrest warrant for **Diaz-Castro**.

35.    Based on the foregoing, I have probable cause to believe, and I do believe, that **Anthony Aleman** has committed the crime of possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)( A)(vi). I therefore request that the Court issue a criminal complaint and arrest warrant for **Aleman**.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

AFFIDAVIT OF JASON T. BUELT                                                              Page 12

36.    Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Nicole Hermann. AUSA Hermann advised me that in her opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
Jason T. Buelt
Detective
West Side Interagency Narcotics Team


Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at ____5:44____ p.m. on September 30, 2025.


_____
HONORABLE STACIE F. BECKERMAN
UNITED STATES MAGISTRATE JUDGE


AFFIDAVIT OF JASON T. BUELT                                                Page 13